Cordy, J.
(concurring in part). I agree that in setting an amount of restitution especially as a condition of a probation, a judge can and should take into account the likely ability of the defendant to pay that amount during the term of the probation imposed. I disagree with the extra burden the court seems prepared to place *131 on victims in establishing their economic loss in the context of thefts from a retail enterprise.
It seems to me that the economic loss incurred in that context should be presumed to be the retail price of the goods stolen, an amount that can be readily ascertained and presented to the court at a restitution hearing. See State v. Smith, 144 Idaho 687, 693 (2007) (where retailer’s items stolen, correct value for restitution will generally be retail market value of items).
The court suggests, however, that store owner victims are only entitled to reshtuhon based on the retail prices of the items stolen if they can affirmatively prove by a preponderance of the evidence that the specihc items would have been sold at the retail price if they had not been stolen. This is an unnecessary burden in the ordinary case, and the cases cited by the court in support of its proposition are far from ordinary.
For example, in People v. Chappelone, 183 Cal. App. 4th 1159 (2010), the victim was the Target department store, and the principal defendant was an employee responsible for seeing that damaged items and merchandise withdrawn by manufacturers were taken off the sales floor and returned to the appropriate entity for credit (or sold for deeply discounted prices to charitable organizahons). Id. at 1163, 1165-1166. The theft at issue involved large quantities of such items awaiting disposal from storage. Id. at 1165.
The court set reshtuhon at $278,678, based on the full retail price of the goods.[1] Id. at 1170. On appeal, the Court of Appeal noted that the vast majority of stolen goods had in fact been recovered and returned to Target, and that the items, even before the theft, were identified by Target as damaged or otherwise not saleable at retail in any event.[2] Id. at 1173-1174. In these circumstances, the Court of Appeal reasonably held that valuing the merchandise at its full retail price highly inflated its actual value, and the recovery of that amount would result in a windfall to Target. Id. at 1178-1179. While the retail price was a “reasonable starting point the value should have been discounted to reflect the true nature of the goods.” Id. at 1175. Consequently, the restitution order was vacated and the matter remanded for a further *132 hearing.
The facts in United States v. Ferdman, 779 F.3d 1129 (2015), are also exceptional. The items at issue in that case were eighty-six cellular telephones that the defendant purchased at Sprint stores (fraudulently using various corporate accounts) for a “subsidized price” contingent on Sprint service agreements. Id. at 1131, 1136. The defendant then resold the telephones. Id.
The trial judge ordered restitution in an amount based on the full retail price that could have been charged to a customer purchasing the telephones without a service agreement.[3] Id. at 1131. While the Appeals Court concluded that the trial court judge could ordinarily include lost retail sales and lost profits in a restitution order, the specific language of the Federal Mandatory Victims Restitution Act of 1996, as applied in this case, required more than just an unverified letter from Sprint stating that its losses were the full unsubsidized retail prices of the telephones, without any evidence from which the trial judge could infer that the defendant’s theft caused the victim to lose actual retail sales at those prices. Id. at 1136-1137, 1139-1140.
In sum, it is unnecessary in the present case to conclude anything other than that the retail price of goods stolen from a retail store in the straightforward circumstances of this case was proper.

This amount also included $44,000 in expenses incurred by the Target department store during the investigation. People v. Chappelone. 183 Cal. App. 4th 1159, 1170 (2010).

The merchandise was ultimately donated by Target to charities. See id. at 1171.

This amount included apparently $3,300 in investigative costs incurred by Sprint. See United States v. Ferdman, 779 F.3d 1129, 1134 (2015).