**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JEFFREY CHARLES ZANDER,

    Defendant - Appellant.

No. 17-4156
(D.C. No. 2:10-CR-01088-DN-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.
_____

Jeffrey Charles Zander, appearing pro se, appeals from the district court's

second amended judgment resentencing him after a second remand. Exercising

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

**BACKGROUND**

A federal jury convicted Mr. Zander of all counts in the Superseding

Indictment, which included two counts each of mail and wire fraud, one count of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

money laundering, and three counts of willful failure to file federal tax returns.

Mr. Zander's fraud and money laundering convictions resulted from his fraudulent

diversion of funds from the Paiute Indian Tribe of Utah (Tribe) to his personal use.

The district court sentenced Mr. Zander to 68 months in prison and ordered

him to pay $202,543.92 in restitution to the Tribe.  We affirmed Mr. Zander's

convictions on appeal, but concluded there were errors in the loss calculation under

the sentencing guidelines and the amount of restitution ordered that required a

remand to the district court for resentencing.  *See United States v. Zander*,

794 F.3d 1220 (10th Cir. 2015) ("*Zander I*").

On remand, the district court resentenced Mr. Zander to the same term of

imprisonment, but decreased the amount of restitution to $176,698.  It subsequently

reduced Mr. Zander's term of imprisonment to 63 months on the government's

motion to correct an error in the sentence.

On Mr. Zander's appeal from his revised sentence and restitution amount, we

affirmed the district court's refusal to consider sentencing guideline arguments newly

raised by Mr. Zander because they were beyond the scope of our prior mandate.

*United States v. Zander*, 705 F. App'x 707, 710 (10th Cir. 2017) ("*Zander II*").  But

we concluded it was unclear whether the district court had resolved two of

Mr. Zander's arguments challenging the revised restitution order, and held the district

court had erred in not addressing these arguments to the extent it believed it was

precluded from doing so by our prior mandate.  *Id.* at 710-11.  As a result, we

reversed and remanded Mr. Zander's sentence again, directing the district court to

2

exercise its discretion and determine whether to consider these restitution arguments. *See id.* at 711.

On remand, the district court requested briefing on the issues we had identified, received additional objections from Mr. Zander regarding his sentence, and held two sentencing hearings, including one in which the government presented evidence in support of its restitution request. Based on the evidence and arguments presented, the district court again sentenced Mr. Zander to 63 months in prison and ordered restitution in the amount of $176,698. This appeal followed.

## DISCUSSION

Mr. Zander challenges various aspects of the district court's restitution order and again disputes a sentencing enhancement applied in his original sentencing. We address these and other issues raised by Mr. Zander in turn.

### A.     The Tribe as a "victim" under the MVRA

"A district court may order criminal restitution only as authorized by federal statute." *United States v. Ferdman*, 779 F.3d 1129, 1131 (10th Cir. 2015). The restitution order in this case was made pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, which requires district courts to order that restitution be paid to the "victim" of certain offenses, including "an offense against property . . . committed by fraud or deceit," *id.* § 3663A(a)(1), (c)(1)(A)(ii). The MVRA defines a "victim" for this purpose as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." § 3663A(a)(2). Mr. Zander argues the district court lacked authority to

3

order him to pay restitution to the Tribe because the Tribe is not a "person" and therefore cannot be a victim under the MVRA. We review this issue of law de novo. *See United States v. Wells*, 873 F.3d 1241, 1265 (10th Cir. 2017).

We and our sister circuits have consistently held that governmental entities, such as the Tribe, can be "victims" for purposes of restitution under the MVRA. *See, e.g.*, *United States v. Butler*, 694 F.3d 1177, 1184 (10th Cir. 2012) (holding state can be a victim under the MVRA); *United States v. Quarrell*, 310 F.3d 664, 677 (10th Cir. 2002) (holding federal government can be a victim under the statute); *United States v. Newell*, 658 F.3d 1, 30 (1st Cir. 2011) (stating governmental entities can be victims under the MVRA). The same is true under the MVRA's predecessor and companion statute, the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, which also defines a "victim" for purposes of restitution as a "person," § 3663(a)(2).[1] *See, e.g., United States v. Burger*, 964 F.2d 1065, 1071 (10th Cir. 1992) (holding "governmental agencies . . . qualify as victims under the VWPA"); *United States v. Martin*, 128 F.3d 1188, 1191 (7th Cir. 1997) (collecting cases demonstrating "an unwavering line of [circuit court] precedent" holding that federal, state, county, and city governments may be "victims" under the VWPA). Every

---

[1] The VWPA authorizes but does not require federal courts to order a defendant to make restitution to the "victim" of various offenses. 18 U.S.C. § 3663(a)(1)(A). It has defined a "victim" as a "person" since 1990. *See United States v. Lincoln*, 277 F.3d 1112, 1113 (9th Cir. 2002). Congress amended the VWPA's definition of "victim" in 1996 when it adopted the MVRA and made the definition of "victim" in both statutes identical. *See id.*; *see also* 18 U.S.C. § 3663(a)(2) (VWPA); *id.* § 3663A(a)(2) (MVRA).

4

circuit court to have considered the issue has also rejected Mr. Zander's implicit contention that the term "person" in the MVRA's definition of "victim" limits victims to natural persons. *See, e.g.*, *United States v. Benedict*, 855 F.3d 880, 886-87 (8th Cir.), *cert. denied*, 138 S. Ct. 348 (2017); *United States v. Ekanem*, 383 F.3d 40, 42-44 (2d Cir. 2004); *United States v. Lincoln*, 277 F.3d 1112, 1113 (9th Cir. 2002).

Mr. Zander argues his narrow construction of the term "victim" in the MVRA is supported by the rule of lenity, which "instructs courts to interpret ambiguous punitive statutes in favor of the accused," *United States v. Serawop*¸ 505 F.3d 1112, 1121 (10th Cir. 2007). But this "rule only applies if there is a grievous ambiguity or uncertainty in the statute." *Id.* at 1122 (internal quotation marks omitted). As the discussion above demonstrates, neither we nor other circuit courts have detected any ambiguity in the MVRA's definition of "victim" with respect to governmental entities. Mr. Zander's contention that the district court lacked authority to order restitution to the Tribe is meritless.

**B.      Restitution Order**

Mr. Zander also challenges the restitution he was ordered to pay to the Tribe. We review the legality of a restitution order de novo, the factual findings underlying the order for clear error, and the amount of restitution imposed for abuse of discretion. *Wells*, 873 F.3d at 1265. The district court's factual findings are clearly erroneous only "if [they] lack[] evidentiary support or if a review of the evidence leaves us with the definite and firm conviction that a mistake has been made." *United States v. Sanchez-Urias*, 887 F.3d 1069, 1071 (10th Cir. 2018) (internal quotation marks omitted).

5

### 1.    Direct causation

As a general rule, restitution can only be ordered under the MVRA "for losses caused by the offense of conviction." *Zander I*, 794 F.3d at 1233 (internal quotation marks omitted).  But when the offense of conviction includes a fraudulent scheme as an element, the MVRA provides an alternative method for assessing restitution, directing that it be paid to any victim "directly harmed by the defendant's criminal conduct in the course of the scheme."  18 U.S.C. § 3663A(a)(2); *see Wells*, 873 F.3d at 1266.  To prove direct causation under this method, the government must show that the victim's loss would not have occurred but for the defendant's conduct in the course of the scheme.  *See Wells*, 873 F.3d at 1266-67.

Mr. Zander was convicted of mail and wire fraud, both of which include "a scheme or artifice to defraud" as an element.  *Zander I*, 794 F.3d at 1226, 1230 (internal quotation marks omitted).  As described in more detail in *Zander I*, the scheme underlying these convictions was Mr. Zander's use of his position as the Tribe's resource and economic development director to appropriate checks intended to pay for consultant services in preparing Integrated Resource Management Plans (IRMPs) for each of the Tribe's five bands.[2]  Mr. Zander set his scheme in motion by suggesting that the Tribe apply to the Bureau of Indian Affairs (BIA) for grant funds to prepare each IRMP.  The Tribe agreed, and Mr. Zander prepared five grant proposals between 2005 and 2007,

---

[2]  An IRMP is a comprehensive, long-term plan for the use, development, and management of Tribal resources and assets.  *Zander I*, 794 F.3d at 1223.  The Tribe's main asset is the reservation lands held in trust by each of its bands.  *Id.*

representing in each that most of the grant proceeds would be used to hire and pay outside consultants and facilitators to assist the Tribe in preparing the IRMPs. The BIA approved the grant proposals, and ultimately provided a total of $165,000 in grant funds for the IRMP projects.

Pursuant to his scheme, Mr. Zander created false purchase orders, progress reports, and invoices for four fictitious companies and represented to the Tribe that these companies had performed work on the IRMPs. Based on these false representations, the Tribe issued checks to these nonexistent companies. Mr. Zander then deposited these checks into his personal bank account for his personal use.

It is undisputed that between 2005 and March 2008 Mr. Zander fraudulently obtained $176,698 as a result of Tribal payments to these nonexistent companies. Because the BIA grants were reimbursement grants, the Tribe made these payments out of Tribal funds, and then obtained reimbursement from the BIA. The Tribe paid $11,698, the difference between the $165,000 in BIA grant monies it received and what it paid to Mr. Zander's fictitious companies, out of Tribal funds. *Zander I*, 794 F.3d at 1223-25 & n.1.

Mr. Zander contends restitution cannot be ordered for any part of the $176,698 he fraudulently obtained because the Superseding Indictment defines the scheme underlying his conviction as securing approval of the BIA grants to develop the IRMP plans and then diverting the proceeds of these grants for his personal benefit. From this premise he argues that none of the payments he appropriated were directly caused by the scheme encompassed in his convictions because they "were made as directed by Tribal

7

Resolutions prior to and independent of any approval by the BIA of federal grant money." Aplt. Opening Br. at 27.

We disagree that this fact, even if true, precludes the restitution ordered by the district court. As described in the Superseding Indictment and *Zander I*, the purpose of Mr. Zander's scheme was to fraudulently obtain money from the Tribe and the BIA. With respect to direct causation, there is more than sufficient evidence demonstrating that the Tribe would not have suffered the harm, the loss of $176,698 in consultant payments Mr. Zander fraudulently diverted to his own use, but for Mr. Zander's criminal conduct in falsely representing in the course of his scheme that fictitious companies had performed work on the IRMP projects for which the BIA had provided funding. The particulars of how and when the Tribe approved moving forward with IRMP work relative to the BIA's approval of the reimbursement grants, or whether or when the Tribe ultimately paid for all of this work out of grant proceeds, is immaterial to this determination.[3]

_____

[3] Mr. Zander in fact acknowledged in *Zander I* that the charged scheme was broader than what he now asserts, describing it as billing the Tribe for work he was not authorized to perform and then pocketing the payments the Tribe made based on his fraudulent representations. 794 F.3d at 1228. He further asserted then that the BIA grant approvals were not an essential part of his scheme, because the Tribe was able to pay for some of the IRMP-related work from other funds before it received the grant awards. *See id.* at 1228 n.3. We rejected this argument, concluding the Tribe's application for and receipt of BIA grant funds was an essential part of Mr. Zander's scheme because it provided the Tribe with a "pool of funds [he] could fraudulently take." *Id.* We nonetheless do not agree with Mr. Zander's current contention that the charged scheme is defined solely by reference to the grant awards, as his scheme was more than simply the diversion of the grant funds. We implicitly recognized as much in *Zander I* by noting evidence "arguably suggest[ing] the

(continued)

8

Mr. Zander also argues that some of the payments included in the restitution order were not part of the scheme underlying in his convictions because they were for road and right-of-way inventories he contends were not part of the IRMP projects referenced in the Superseding Indictment. But it is undisputed that these inventories were undertaken in the same time period as the IRMP projects and that the purchase orders and/or invoices for some of them reference the IRMP for which they were purportedly prepared. Mr. Zander also employed precisely the same method of false purchase orders, reports, and invoices to prompt the Tribe to pay his fictitious companies—and hence him—for this nonexistent consultant work as he did for the other payments in his fraudulent scheme. The district court's finding that these payments were part of the fraudulent scheme underlying his fraud convictions was not, therefore, clearly erroneous.

## 2.      Actual loss

"[A] district court may not order restitution in an amount that exceeds the actual loss caused by the defendant's conduct," and it is the government's burden to prove the amount of this loss. *Ferdman*, 779 F.3d at 1132. Mr. Zander admits the government carried this burden with respect to $107,000 of the restitution amount, which corresponds to the payments the Tribe made for four of the five IRMPs it thought Mr. Zander was overseeing, because these four IRMPs were never prepared. But he asserts there is no

scheme could have succeeded without the BIA's grant approval," *id.*, and that Mr. Zander's "fraud caused" the loss of the additional, non-grant funds the Tribe had contributed to the IRMP projects, *see id.* at 1225 n.1.

9

evidence supporting the district court's finding that the Tribe sustained an actual loss from his appropriation of the remaining $69,698, which the Tribe paid for nonexistent consultant work on the Koosharem Band's IRMP and on the road and right-of-way inventories.

With respect to the Koosharem IRMP, Mr. Zander argues the Tribe received value for its payments because he authored a four-page IRMP for the Koosharem Band's resources. But there is ample evidence in the record supporting the district court's finding that this product was worthless to the Tribe because it was deficient as an IRMP[4] and because it did not reflect the input of the qualified consultants Mr. Zander was supposed to have retained to advise him and the Tribe on the issues it addressed.[5] That the Tribe approved his summary IRMP for the Koosharem Band and the BIA accepted it, both without knowing it was Mr. Zander's fraudulent work product, also does not persuade us that the district court was clearly erroneous in finding the Tribe obtained no value from the Koosharem IRMP document Mr. Zander fraudulently authored. There is

---

[4] A prosecution witness testified at trial that other IRMPs she had seen were a minimum of 50 pages in length and that some were over 100 pages long. *Zander I*, 794 F.3d at 1224.

[5] In fact, Mr. Zander represented in the BIA grant proposals that the grant funds were necessary to hire and pay outside consultants and facilitators because "there is no resident community expertise in natural resources management, strategic planning, or economics." *Zander I*, 794 F.3d at 1223 (brackets and internal quotation marks omitted). And even if Mr. Zander had been qualified in these fields, a Tribal official testified at Mr. Zander's trial that the Tribe expected him to add value to the process by overseeing and reviewing the consultants' work, not by performing the work himself. She also testified that he was barred by his employment contract and the Tribe's ethics policies from hiring and paying himself for work intended for outside consultants.

10

also evidence in the record supporting the district court's finding that the road and right-of-way inventories for which the Tribe paid were never prepared and that even if Mr. Zander had prepared them, they would have been worthless to the Tribe because they too were supposed to be the product of qualified consultants.

Mr. Zander also argues that the district court erred in these findings because it relied in part on hearsay statements by three current or former Tribal officials presented at the sentencing hearing through testimony by FBI Agent Klienlein. But hearsay statements may be received and considered by a court in sentencing "if they bear some minimal indicia of reliability." *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013) (internal quotation marks omitted). This is a "low hurdle," *United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008), that can be surmounted by, among other things, some measure of evidence corroborating the out-of-court statements, *see Ruby*, 706 F.3d at 1229. And there is more than sufficient evidence in the record corroborating the hearsay statements on which the district court relied.

For example, Agent Klienlein testified at the sentencing hearing that he personally did not see the road or right-of-way inventories in the Tribe's IRMP files or on Mr. Zander's thumb drive when he reviewed them in the course of his investigation. This testimony corroborates the Tribal officials' hearsay statements that they never saw these inventories and were not able to locate them in the Tribe's files. The three officials' separate statements that the Tribe received no value from any IRMPs or inventories Mr. Zander may have prepared, because he was not authorized to prepare them and they did not reflect information and analysis by qualified consultants as required, also are

11

indicia of reliability because they corroborate each other. *See Cook*, 550 F.3d at 1297

(affirming district court's reliance on hearsay statements at sentencing in part because the

statements, made by different declarants, corroborated each other). In addition, the

hearsay statements Agent Klienlein reported by one of the former Tribal officials, Gayle

Rollo, are consistent with the direct testimony she gave at Mr. Zander's 2013 trial. For

all of these reasons, we hold the district court did not err in relying on the hearsay

statements to which Agent Klienlein testified.[6]

## C.    Sentencing Enhancement

Mr. Zander also argues the district court erred in refusing to resentence him

without the two-level enhancement for sophisticated means that was part of the

sentencing guidelines calculation the district court used in his first sentencing proceeding.

Mr. Zander did not challenge the sophisticated-means enhancement then or in his first

appeal, but attempted to challenge it after remand during his second sentencing. The

district court ruled then that this objection went beyond the scope of its mandate on

remand.

We affirmed this decision in *Zander II*, holding the district court had properly

applied the mandate rule. *See* 705 F. App'x at 710. Absent exceptional circumstances,

---

[6] Mr. Zander also claims that he should have received advance notice that the government would be presenting hearsay evidence and that he was denied an opportunity to explain or rebut this evidence. But Mr. Zander did not object to the alleged lack of notice at the sentencing hearing, and does not argue plain error now, so we will not consider this objection on appeal. *See Ave. Capital Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 886 (10th Cir. 2016). The record also shows that Mr. Zander had ample opportunity to address the government's hearsay evidence at the sentencing hearing and took full advantage of this opportunity.

this rule limits the district court's discretion on resentencing when the appellate court has specifically limited the scope of the remand. *See United States v. West*, 646 F.3d 745, 748-49 (10th Cir. 2011); *see also United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996) ("Although resentencing on remand is typically de novo, this does not hold true where an appellate court has specifically limited a district court's discretion."). We held in *Zander II* that our prior remand had limited the scope of the remand in a manner that prohibited the district court from considering Mr. Zander's new objections to the enhancement for sophisticated means and other sentencing guideline calculations. 705 F. App'x at 710. We also rejected Mr. Zander's argument that exceptional circumstances warranted a departure from the mandate rule because serious injustice would result if these alleged errors were not corrected. *Id.*

We did not broaden the mandate in our second remand; if anything, we narrowed it to just the two unresolved issues relating to the restitution order. *See id.* at 710-11. Our ruling in *Zander II* that Mr. Zander's objections to the sophisticated-means sentencing enhancement were beyond the limited scope of the district court's mandate therefore established the law of the case on this issue, which "ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal," *West*, 646 F.3d at 747-48.

Although the law of the case doctrine may be excused in some circumstances, Mr. Zander does not argue such circumstances exist here. Instead, he asserts that neither the mandate rule nor the law of the case doctrine applies because the district court made statements in the third sentencing proceeding suggesting it considered and rejected

13

Mr. Zander's objection to the sophisticated-means enhancement on the merits. But the district court also expressly agreed with the government that this issue had previously been addressed by this court and could not be readdressed at the sentencing hearing on remand. This was the proper ruling, and it forecloses Mr. Zander's attempt to resurrect this issue.

### D.     Other Issues

"Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence[.]" Fed. R. Crim. P. 32(i)(4)(A)(ii). Mr. Zander contends the district court failed to comply with these requirements because it did not personally address him and offer him an opportunity to allocute. He also acknowledges that he failed to preserve this objection for appeal, but argues he is nonetheless entitled to relief because the district court committed plain error as described in *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1137 (10th Cir. 2017).[7]

We disagree. The record shows the district court personally engaged Mr. Zander, who was appearing pro se, throughout the two sentencing hearings following our second remand. It also shows the district court offered Mr. Zander several open-ended opportunities to speak or present information before imposing sentence and that Mr. Zander did so. As a result, there was no error.

---

[7] To demonstrate plain error, Mr. Zander must show: "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Bustamante-Conchas*, 850 F.3d at 1137 (internal quotation marks omitted).

Mr. Zander also requests that we reassign this case to a new judge on remand on grounds of personal bias. But Mr. Zander fails to show personal bias, and his request is moot in any event because he fails to demonstrate that remand is required.

## CONCLUSION

For the reasons stated above, we affirm Mr. Zander's sentence. We also grant the government's unopposed motion to take judicial notice of the brief Mr. Zander filed on June 16, 2014 in appeal No. 13-4174.

Entered for the Court


Jerome A. Holmes
Circuit Judge

15