**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROGER KEITH HOWARD,

      Defendant - Appellant.

No. 14-1075

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:12-CR-00039-RBJ-1)**

---

Elizabeth L. Harris, Law Office of Elizabeth L. Harris, LLC, Denver, Colorado, for Defendant -Appellant.

Paul Farley, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff - Appellee.

---

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Defendant Roger Howard pleaded guilty to three counts of wire fraud, *see* 18 U.S.C. § 1343, and one count of money laundering, *see id.* § 1957, arising from his participation in three mortgage-fraud schemes. His participation included identifying property buyers, arranging for their applications for mortgage loans to overstate assets and incomes, and obtaining inflated property appraisals and kickbacks to himself and some buyers. All buyers defaulted on their mortgage notes. Some notes had been sold by the original lenders to downstream lenders, who may themselves have resold the notes.

The United States District Court for the District of Colorado sentenced Defendant to 108 months' imprisonment and ordered him to pay $8,862,191.18 in restitution. He argues that the district court made two errors in imposing the sentence: (1) it improperly increased his offense level by miscomputing the loss to the mortgage lenders, *see* USSG § 2B1.1; and (2) it awarded restitution to alleged victims without evidence of their actual losses. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm the determination of loss under USSG § 2B1.1, which was calculated in accordance with our precedents, but we largely agree with Defendant's restitution argument and therefore reverse the restitution order and remand for further proceedings.

I.    **LOSS UNDER USSG § 2B1.1(B)(1)**

Under the sentencing guideline for fraud, the offense level is based on the amount of loss. *See* USSG § 2B1.1(b)(1). The district court calculated the loss caused by

2

Defendant to be $8,961,191.18. For losses exceeding $7 million but less than $20 million, the offense level is 20. *See id.* § 2B1.1(b)(1)(K).

In mortgage-fraud cases like this, "[a]ctual loss" under USSG § 2B1.1 cmt. n.3(A)(i) "is the unpaid portion of the loan as offset by the value of the collateral." *United States v. Crowe*, 735 F.3d 1229, 1241 (10th Cir. 2013) (internal quotation marks omitted), *cert. denied*, 134 S. Ct. 1565 (2014). "[S]o long as it is foreseeable that loans will be sold or repackaged, both the original lenders and downstream lenders are foreseeable victims of the fraud, and the general formula applies." *United States v. Smith*, 705 F.3d 1268, 1276 (10th Cir. 2013). "That is so because any gains or losses sustained by the original lender will be offset by a corresponding loss or gain by the downstream lender, leaving the total loss to equal mortgage balance minus foreclosure price." *Id.* As a result, "the number of lenders involved and the amount of profit made [or loss suffered] by the original lender or any intermediate lenders is mathematically irrelevant to the calculation of the total loss caused by the fraud." *Id.* (emphasis and internal quotation marks omitted).

Defendant does not dispute that the district court's method of calculating loss was the method dictated by our precedents. Instead, he challenges the loss amount based on three arguments not raised below: (1) the government's evidence was insufficient to prove $709,588 in losses on eight loans included in the loss amount; (2) the court should have reduced the loss amount by $973,935 to account for interest payments made on the loans; and (3) the court should not have included $313,261 in losses to a downstream

3

noteholder that purchased three loans after the buyers had defaulted. Based on these arguments, he concludes that the correct total loss amount is $6,964,407 (instead of $8,961,191). *See* Aplt. Br. at 27. Because his offense level and guidelines range remain the same unless the net actual loss is $7 million or less, *see* USSG § 2B1.1(b)(1)(K), Defendant cannot prevail if we reject any argument challenging more than $35,593.

When the defendant objects to the loss calculation below, we review the district court's factual findings for clear error and calculation methodology de novo. *See Crowe*, 735 F.3d at 1235–36. But because Defendant failed to object below on the grounds argued here, we review only for plain error. *See id.* at 1242. Relief is available under the plain-error standard only if Defendant establishes four elements: "(1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012) (brackets and internal quotation marks omitted). Defendant must establish all four elements. *See id.* "[T]he failure of any one will foreclose relief and the others need not be addressed." *Id.*

Defendant argues that the district court committed plain error by counting losses on certain loans totaling $709,588. Among those losses are the amounts of five second-mortgage loans totaling $422,588. The court calculated the losses from printouts from UTLS Default Services. The printouts showed the amounts of the loans and named the noteholders. Defendant asserts that the amounts cannot be believed because each

4

printout is indisputably wrong in naming the holder of the first-mortgage note on the property.   This challenge to the loss calculation raises solely a question of fact—was there a second mortgage in the amount stated on the printout?  But "factual disputes regarding sentencing not brought to the attention of the district court do not rise to the level of plain error." *United States v. Lewis*, 594 F.3d 1270, 1288 (10th Cir. 2010) (brackets and internal quotation marks omitted).

Defendant relies on *United States v. Goode*, 484 F.3d 676, 681 (10th Cir. 2007), for the proposition that sufficiency of the evidence can be reviewed for plain error. *Goode*, however, involved a challenge to the sufficiency of the evidence of guilt at a criminal trial, where different considerations are in play than with sentencing.[1]  More importantly, the issue raised by Defendant is one of *admissibility* of evidence—was the printout sufficiently reliable to be used to establish the amount of the second mortgage notes?—not *sufficiency*.  Because Defendant failed to object to the evidence below, there was no need for the government to explain why the printout was likely to be accurate. Defendant has given us no reason to believe that the government could not present reliable evidence on remand of the amount of the second-mortgage loans.  *See Lewi*s, 594

---

[1] For example, if the appellate court determines that there was insufficient evidence of guilt, the Double Jeopardy Clause forbids the government from gathering more evidence and subjecting the defendant to a second trial, *see Burks v. United States*, 437 U.S. 1, 14–17 (1978); but the Double Jeopardy Clause does not apply to noncapital sentencing, *see Monge v. California*, 524 U.S. 721, 728–29 (1998).   As a result, only in the sentencing context does an appellate court reviewing for plain error consider whether anything ultimately would be accomplished by a remand for further proceedings. *See Lewis*, 594 F.3d at 1288.

F.3d at 1288. We are not disposed to ignore our binding precedents regarding the scope of plain-error review of sentencing determinations.

## II.    RESTITUTION

The award of restitution in this case is governed by the Mandatory Victims Restitution Act of 1996 (MVRA), which "requires certain offenders to restore property lost by their victims as a result of the crime." *Robers v. United States*, 134 S. Ct. 1854, 1856 (2014). Defendant's principal challenge is to the method of calculating the loss to downstream lenders—that is, lenders who did not originate the mortgage loan but purchased it from the original lender or an earlier downstream lender. Because we agree with this challenge and remand for further proceedings, we need not address his other challenges, which had not been raised below and can be considered on remand.

The MVRA requires that a defendant convicted of an offense against property, including any offense committed by fraud or deceit, be ordered to pay restitution to victims of the offense. *See* 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). Payment is to be made to "an identifiable victim or victims [who] suffered . . . pecuniary loss." *Id.* § 3663A(c)(1)(A)(ii), (B). A *victim* is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." *Id.* § 3663A(a)(2). "Restitution must not unjustly enrich crime victims or provide them a windfall." *United States v. Ferdman*, 779 F.3d 1129, 1132 (10th Cir. 2015). District courts thus "may not order restitution in an amount that exceeds the actual loss caused by the defendant's conduct, which would amount to an illegal sentence." *Id.* (internal

quotation marks omitted); *see also United States v. Griffith*, 584 F.3d 1004, 1019 (10th Cir. 2009) ("a district court that orders restitution in an amount greater than the total loss caused by the offense thereby exceeds its statutory jurisdiction and imposes an illegal sentence") (internal quotation marks omitted)).

In disputes over the amount of a victim's loss, the government bears the burden of persuasion by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e). The district court "may consider hearsay evidence that bears minimal indicia of reliability so long as the defendant is given the opportunity to refute the evidence." *United States v. Rodriguez*, 751 F.3d 1244, 1261 (11th Cir. 2014) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 310 (2014); *cf. United States v. Sunrhodes*, 831 F.2d 1537, 1544 (10th Cir. 1987) (admission of hearsay testimony with substantial indicia of reliability in restitution proceeding did not violate hearsay rule or Confrontation Clause). We review the restitution order for an abuse of discretion, which requires us to review factual findings for clear error and application of the MVRA de novo. *See Ferdman*, 779 F.3d at 1131; *United States v. Battles*, 745 F.3d 436, 460 (10th Cir. 2014), *cert. denied,* 135 S. Ct. 355 (2014); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (reviewing sanction under Fed. R. Civ. P. 11: "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

The "victim" identified for each loan was the holder of the note when the property went into foreclosure. The district court calculated the restitution amount for each

identified victim using the same method it employed in calculating loss under USSG § 2B1.1—by adding the unpaid principal balances on each loan held by the victim and subtracting the amounts recovered from sales of the properties securing the loans. (The total restitution amount was $99,000 less than the loss under § 2B1.1 because the noteholder on one loan had not been identified.)

Defendant contends that the court "applied an incorrect methodology for computing restitution." Aplt. Br. at 10. He argues that the MVRA limits restitution to "actual, out-of-pocket losses," *id.*, and that the measure of actual loss to a downstream lender is "the difference between what the successor lender paid for the loan . . . and proceeds obtained from payments and sale of collateral," *id.* at 10–11. The method used to calculate restitution in this case—subtracting the amounts recovered through foreclosure sales from the unpaid principal balances on the loans—does not reflect actual loss to downstream noteholders, he says, because they could have paid less than the unpaid balance to acquire the notes. *See id.* at 11, 30–31.

Defendant's argument is correct. Although the total-loss calculation under USSG § 2B1.1 does not depend on which lender in the chain of title of a mortgage note suffered what loss, that information is necessary to avoid windfalls in awarding restitution. A hypothetical example illustrates why. Say, the original mortgage note was for $500,000; the original noteholder sold the note to a downstream lender for $200,000; the borrower made no payments on the note; and foreclosure on the property netted $100,000. Under the district court's methodology, Defendant would have to pay the

downstream lender restitution of $400,000 ($500,000 less $100,000 from the foreclosure sale), although its loss was only $100,000.  That would create an unlawful windfall for the downstream lender.

Other circuits agree with this analysis.  The Ninth Circuit has noted that "[b]ecause the value of [the] loan is not necessarily its unpaid principal balance, but may vary with the value of the collateral, the credit rating of the borrower, market conditions, or other factors, the loan purchaser may have purchased the loan for less than its unpaid principal balance." *United States v. Yeung*, 672 F.3d 594, 602 (9th Cir. 2012), *overruled in part on other grounds by Robers*, 134 S. Ct. 1854.  As a result, it said, "To calculate a victim's restitution award using the outstanding principal balance of the loan, if the victim only paid a fraction of that amount to obtain the loan on the secondary market, would cause the victim to receive an amount exceeding its actual losses." *Id.*; *see United States v. Chaika*, 695 F.3d 741, 748 (8th Cir. 2012) ("The ultimate foreclosure sale price is irrelevant to an initial lender who sold the loan, while the purchasing secondary lender may not be a victim, and if it is, actual loss will turn on its purchase price in the secondary market, whether it remained on the loan all the way to foreclosure, and perhaps other factors."); *United States v. v. Beacham*, 774 F.3d 267, 278–79 (5th Cir. 2014) (following *Chaika* and *Yeung*).

The government contends that this point was not raised below, but we disagree. Defendant's sentencing memorandum argued that the restitution calculations in the probation office's presentence report were flawed because they did not examine the

purchase prices paid by downstream holders of the mortgage notes, and he reminded the district court of the issue at the sentencing hearing. Once that objection to the government's methodology was clear, Defendant was not also required to object to the evidence offered in reliance on the challenged methodology. He gave ample notice that he objected to a restitution calculation that did not identify the specific losses of individual noteholders in the chain of title of a mortgage note. When the government did not put on such evidence, it took the risk that we would agree with Defendant's legal argument.

We recognize that the government may be able to explain (on remand) why the restitution calculation is "a reasonable estimate of the loss," *United States v. James*, 564 F.3d 1237, 1248 (10th Cir. 2009) (internal quotation marks omitted); but it did not provide such an explanation in the district court and, equally important, the court itself made no finding on the point. *See Ferdman*, 779 F.3d at 1133 (district courts may not "dispense with the necessity of proof as mandated by the MVRA and simply 'rubber stamp' a victim's claim of loss based upon a measure of value unsupported by the evidence," and restitution awards may not be based on "[s]peculation and rough justice" (internal quotation marks omitted)). The presentence report stated that the victims it identified had not responded to correspondence from the probation office. The FBI agent who testified at the sentencing hearing about the losses caused by Defendant said that he did not know whether original lenders had suffered losses on any loans sold, and that he had no information about the amounts paid by downstream noteholders to purchase the

loans. He never testified that the information was not available and, for all the record reveals, he never asked for it. Neither the failure of a victim to respond to a request for evidence of actual loss nor the government's unexplained failure to obtain the necessary proof suffices to justify a restitution award. There is no public interest served by requiring that restitution be paid to an alleged victim who declines to cooperate in providing the evidence necessary to establish its loss.

In short, although the impact of sales of mortgage notes to downstream lenders is generally irrelevant to the total-loss calculation under USSG § 2B1.1, it is highly relevant in calculating restitution under the MVRA. *See United States v. James*, 592 F.3d 1109, 1116 n.6 (10th Cir. 2010) ("the calculation of loss for sentencing purposes does not necessarily establish loss for the purpose of awarding restitution under the MVRA"). We remand with instructions that the district court vacate its restitution order and redetermine the amount of actual loss to identified downstream-noteholder victims. Should the court find the existing record to be insufficient to permit a proper calculation of a victim's actual loss, the court may "(1) ask the Government to submit additional evidence, (2) hold an evidentiary hearing, or (3) decline to order restitution." *Ferdman*, 779 F.3d at 1133.

## III.    CONCLUSION

We AFFIRM the district court's calculation of loss under USSG § 2B1.1 and REMAND with instructions that the court VACATE its restitution order for redetermination of the amount of actual loss to apparent victims.

11