**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRUCE CARLTON WRIGHT,

    Defendant - Appellant.

No. 15-5090

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:14-CR-00136-GKF-2)**
_____

Barry L. Derryberry, Research and Writing Specialist (Julia L. O'Connell, Federal Public Defender, William Patrick Widell, Assistant Federal Public Defender, and Julie K. Linnen, Assistant Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellant.

Joel-lyn A. McCormick, Assistant United States Attorney (Danny C. Williams, Sr., United States Attorney, with her on the brief), Office of the United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **PHILLIPS** and **BALDOCK**, Circuit Judges.[*]
_____

[*] The Honorable Neil Gorsuch heard oral argument but did not participate in the opinion. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. *See* 28 U.S.C. §46(d); *see also United States v. Wiles*, 106 F.3d 1516, 1516 n* (10th Cir. 1997) (noting this court allows remaining panel judges to act as a quorum to resolve an appeal); *Murray v. Nat'l Broad. Co.*, 35 F.3d 45, 48 (2d Cir. 1994) (remaining two judges of original three judge panel

_____

**PHILLIPS**, Circuit Judge.

_____

A jury convicted Bruce Carlton Wright of conspiracy to commit bank fraud and of eleven counts of bank fraud arising from his participation in a scheme to submit false draw requests and invoices to obtain bank loans. The district court sentenced Wright to thirty-three months' imprisonment and ordered him to pay $1,094,490.60 in restitution. Wright raises several issues on appeal, concerning jury instructions, withheld impeachment evidence, and bank loss and restitution amounts. We affirm.

## BACKGROUND

A grand jury sitting in the Northern District of Oklahoma indicted Wright and Alan Blaksley on one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 1344 (Count 1), and on twelve counts of bank fraud in violation of 18 U.S.C. § 1344(1) (Counts 2-13). Before trial, Blaksley pleaded guilty to conspiracy to commit bank fraud and agreed to testify as a government witness at trial. Wright chose to defend against the charges at trial.

During the time charged in the Indictment, June 2007 to July 2008, Wright served as president of five Oklahoma limited liability companies owned by Blaksley. One of these companies, Group Blaksley Properties, LLC, obtained a $6.5 million

may decide petition for rehearing without third judge), *cert. denied*, 513 U.S. 1082 (1995).

loan from International Bank of Commerce (Bank) to develop a senior-living community in Bentonville, Arkansas.[1] Sometime during the development of the property, Wright and Blaksley agreed to a fraudulent scheme in which Wright submitted fraudulent monthly draw requests for unperformed work and duplicate draw requests for work already performed elsewhere. As part of their scheme, Wright and Blaksley included with the draw requests pictures of construction work supposedly (but not) completed at the Bentonville project. Misled by the false information, the Bank paid $1,176,490.60 in draw requests to Group Blaksley Properties. In fact, Group Blaksley Properties had performed little work on the Bentonville site. Blaksley pocketed almost all of the $1,176,490.60 for his personal use, and Wright obtained incidental benefits.

In April 2008, the Bank inspected the property and saw that Group Blaksley Properties had done much less work than represented. Before 2015, the Bank foreclosed and sold the Bentonville property, but the record doesn't say how much it got from the sale.

The jury convicted Wright on the conspiracy count and eleven of the twelve bank-fraud counts.[2] Wright didn't object to the Presentence Investigation Report (PSR) or any of its contents, either before or at sentencing. The district court adopted

---

[1] The Bank's loan acted as a line of credit, requiring Group Blaksley Properties to submit draw requests after completion of work.

[2] The jury found Wright not guilty of Count 2—the first bank-fraud count. Count 2 represented the first draw request for $82,000. The Presentence Investigation Report and the district court did not hold Wright accountable for this draw request.

3

the PSR's uncontested loss calculation of $1,094,490.60, and sentenced Wright to thirty-three months' imprisonment. Relying also on the PSR's uncontested restitution calculation, the district court ordered Wright to pay $1,094,490.60 in restitution. Wright appealed.

## DISCUSSION

Wright asserts that the district court erred in five ways: (1) the district court plainly erred by not including within its listed elements of conspiracy to commit bank fraud the necessary element of intent to defraud; (2) the district court erred in responding to a written question from the jury during deliberations by directing the jury to consider each indictment count separately; (3) the district court erred in denying Wright's Motion for New Trial based on a claimed *Brady* violation; (4) the district court plainly erred in calculating the loss amount under USSG § 2B1.1(b)(1); and (5) the district court plainly erred in calculating the restitution amount.

We review Wright's first, second, fourth, and fifth asserted errors, to which he didn't properly object in the district court, under the plain-error standard. *United States v. Faust*, 795 F.3d 1243, 1251 (10th Cir. 2015). Under this standard, Wright must establish "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quoting *United States v. Burbage*, 365 F.3d 1174, 1180 (10th Cir. 2004)). Plain error affects a defendant's substantial rights if "there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different. A

4

reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Hale*, 762 F.3d 1214, 1221 (10th Cir. 2014) (quoting *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014)).

Because Wright's Motion for New Trial, his third asserted error on appeal, alleges a *Brady* violation, we review de novo the district court's denial of that motion. *United States v. Velarde*, 485 F.3d 553, 558 (10th Cir. 2007).

## I. The district court didn't plainly err in its jury instruction listing the elements of conspiracy to commit bank fraud.

We review the jury instructions "in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Kalu*, 791 F.3d 1194, 1200–01 (10th Cir. 2015) (quoting *United States v. Thomas*, 749 F.3d 1302, 1312 (10th Cir. 2014)).

Wright argues that the district court plainly erred by not including "intent to defraud" as an element of conspiracy to commit bank fraud in Jury Instruction 14. Appellant's Opening Br. at 13. Because Wright didn't object to this jury instruction, we review under the plain-error standard. *United States v. LaVallee*, 439 F.3d 670, 684 (10th Cir. 2006). Wright's plain-error argument fails on the first step of the analysis—he cannot show error. Though the conspiracy instruction didn't list "intent to defraud" as an element of the conspiracy, the district court cured this deficiency by incorporating into the conspiracy instruction that same intent element from Instruction 15, which provided the elements of bank fraud.

5

Count 1 charged Wright with conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. "[C]onspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself." *United States v. Robertson*, 473 F.3d 1289, 1292 (10th Cir. 2007) (quoting *Ingram v. United States*, 360 U.S. 672, 678 (1959)). And bank fraud requires intent to defraud a financial institution. *United States v. Gallant*, 537 F.3d 1202, 1223 (10th Cir. 2008). In this circumstance, our circuit's pattern jury instructions favor listing "intent to defraud" as an element of conspiracy to commit bank fraud. Tenth Circuit Pattern Jury Instructions Criminal § 2.19 (Use Note). Here, the district court's conspiracy instruction neglected to expressly include this intent-to-defraud element.

Even so, we disagree with Wright that the district court's straying from the most proper instruction amounts to error in his case.[3] *See United States v. Knight*, 659 F.3d 1285, 1287 (10th Cir. 2011) (in reviewing jury instructions for error, we read and evaluate them in their entirety to determine whether the instructions as a whole fairly, adequately, and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law). Under Instruction 14—the conspiracy instruction—the district court informed the jury that it could not convict of conspiracy absent finding that Wright had agreed with another person to commit "bank fraud":

[3] We don't address whether the deficiency would have mattered had the jury convicted on the conspiracy count but acquitted on all the bank-fraud counts.

The defendant Bruce Carlton Wright is charged in Count 1 with conspiring to commit *bank fraud*. It is a crime for two or more people to agree to commit a crime. To find the defendant guilty of conspiracy to commit *bank fraud* you must be convinced the government has proved each of the following beyond a reasonable doubt:

> First: two or more people reached an agreement to commit the crime of *bank fraud*;
>
> Second: the defendant knew the essential objectives of the conspiracy;
>
> Third: the defendant knowingly and voluntarily participated in the conspiracy; and
>
> Fourth: the alleged coconspirators were interdependent.

R. Vol. 1 at 45 (emphasis added). And under Instruction 15, the district court told the jury that bank fraud required proof that Wright had "acted with intent to defraud." *Id.* at 47; *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions," and "to understand a judge's answer to its question."). Hence the conspiracy instruction incorporated "intent to defraud" into its elements by requiring an agreement to commit bank fraud.[4]

---

[4] Because Wright fails the first step of the plain-error analysis—error—we need not reach the remaining three steps. Even so, we note that Wright could not show that his claimed error affected his substantial rights. In convicting Wright on individual bank-fraud counts, the jury necessarily found that Wright had acted with intent to defraud in those instances. In such circumstances, where a conspiracy instruction incorporates a missing intent element by reference to the instruction governing the substantive crime, we sustain the conspiracy conviction against a challenge that its instruction missed an element. *See Robertson*, 473 F.3d at 1291–93.

**II.** **Wright waived any objection to the district court's response to a jury question by failing to argue plain error on appeal.**

During deliberations, the jury sent the district court a note asking, "Your Honor, does the defendant have to be guilty of Count No. 1 in order to be guilty or not guilty of other counts."[5] R. Vol. 2 at 1614. In conferring with counsel, the district court stated its belief that the proper response was "no." *Id.* It proposed to respond, "No, the counts should be reviewed separately." *Id.* at 1618. Wright's counsel stated that he preferred that the court respond, "You have all the law necessary." *Id.* The district court asked Wright's counsel, "[A]re you saying that it would be legally incorrect to say 'no'?" *Id.* Wright's counsel responded, "No, sir. I think the answer is – I think legally the answer is 'no.'" *Id.* Wright's counsel then requested that the court respond, "You must decide whether the government has proven each and every element of each count in the indictment and you must consider each count separately."[6] *Id.* at 1619. Over the general objection of Wright's counsel, the district court responded to the jury, "No, you must consider each count separately." *Id.*

On appeal, Wright still concedes that the district court correctly answered the note "No" for the jury's consideration of the bank-fraud counts based on Wright's own conduct. But, now for the first time, he argues a new point—that the correct

---

[5] Our circuit's pattern jury instructions favor instructing the jury to separately consider the evidence on each count. Tenth Circuit Pattern Jury Instructions Criminal § 1.22. Here, the jury instructions didn't include this instruction.

[6] This response would not have answered the jury's question.

8

answer was "Yes" for bank-fraud convictions based on Blaksley's acts and not his own—the *Pinkerton* theory of liability.[7] To convict Wright of bank fraud on *Pinkerton* liability, the jury would have to convict him of Count 1—conspiracy to commit bank fraud. So, Wright says, the district court's written response to the jury was incorrect—it enabled the jury to acquit him of the conspiracy but still convict him for bank fraud based on *Pinkerton* liability. From this, Wright claims that we can't know whether the jury convicted Wright of bank fraud for his own acts, or instead for Blaksley's acts under *Pinkerton*.

Because Wright didn't object on *Pinkerton* grounds to the district court's written response to the jury's question, he forfeited that argument. Even though Wright objected generally, he didn't object on *Pinkerton* grounds and never presented his current argument to the district court. When a defendant objects at the district

---

[7] *See Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946); *United States v. Rosalez*, 711 F.3d 1194, 1208 (10th Cir. 2013) (*Pinkerton* stands for the "longstanding rule that a party to a continuing conspiracy may be responsible for substantive offenses a coconspirator commits") (quoting *United States v. Dumas*, 688 F.2d 84, 87 (10th Cir. 1982)). The instruction in this case stated as follows:

> If you find the defendant guilty of the conspiracy charged in Count One and you find beyond a reasonable doubt that during the time the defendant was a member of that conspiracy another coconspirator committed any of the specific offenses in Counts Two through Thirteen, and that specific offense either was committed to achieve an objective of, or was a foreseeable consequence of, the conspiracy, then you may find the defendant guilty of that specific offense, even though the defendant may not have participated in any of the acts which constitute that specific offense.

R. Vol. 1 at 49.

court but raises a different argument on appeal, we review for plain error. *United States v. Sorensen*, 801 F.3d 1217, 1238 (10th Cir. 2015). Thus, Wright must satisfy the plain-error standard to obtain appellate relief.

But on appeal, Wright doesn't argue that the district court plainly erred in its response to the jury's question. Instead, he argues that the district court abused its discretion. We have stated that "the failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011). And we have repeatedly declined to consider arguments under the plain-error standard when the defendant fails to argue plain error. *See, e.g.*, *United States v. De Vaughn*, 694 F.3d 1141, 1159 (10th Cir. 2012) (refusing to discuss merits where the defendant "has not even tried to show how the alleged errors were 'plain'"); *United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) ("Mr. Lamirand has not asked us to review his late-blooming argument for plain error. Accordingly, we decline to do so and will not definitively opine on the merits of this argument."). Thus, we decline to review Wright's argument under the plain-error standard.[8]

---

[8] Even if we considered Wright's argument under the plain-error standard, we would find no error. First, the district court's *Pinkerton* instruction itself shows the jury would not be led astray as Wright fears. The first sentence of the *Pinkerton* instruction tells the jury that *Pinkerton* liability depends on a conspiracy conviction. The district court's response to the jury's question did nothing to contradict this language. Second, the jury *did* convict Wright of conspiracy to commit bank fraud, so

10

**III.** **The district court properly exercised its discretion in denying Wright's Motion for New Trial.**

Wright filed a Motion for New Trial under Federal Rule of Criminal Procedure 33, arguing that the government withheld from him during trial a Victim Impact Statement that the Bank's President, David Moore, prepared for his coconspirator Blaksley's upcoming sentencing. In the Victim Impact Statement, dated a week before Wright's trial, Mr. Moore reported that Blaksley had continued interfering with the Bank's attempt to recover assets even after the Bank obtained a charging order.[9] In particular, Mr. Moore reported that Blaksley had intentionally withheld distributions from one of his limited liability companies to prevent the Bank from recovering money under its charging order against that company. Even though the FBI agent and the Assistant United States Attorney knew about this information, Wright says, the government withheld this information from him until after his trial. Wright claims this information would have helped him further impeach Blaksley at trial.

The district court denied Wright's Motion for New Trial, concluding that the Victim Impact Statement introduced at Blaksley's sentencing hearing was merely cumulative impeachment evidence. Wright seeks a new trial, arguing that the

---

it had full basis to convict Wright on the bank-fraud counts either for his own acts or Blaksley's.

[9] A charging order is a "statutory procedure whereby an individual partner's creditor can satisfy its claim from the partner's interest in the partnership." *Charging Order*, Black's Law Dictionary (10th ed. 2014); *see* Okla. Stat. Ann. tit. 18, § 2034.

11

government withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[10]

To obtain a new trial based on a *Brady* violation, Wright must show that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to [Wright], and (3) the evidence was material." *Velarde*, 485 F.3d at 558 (quoting *United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999)). "Due process mandates disclosure by the prosecution of all evidence that favors the defendant and is 'material either to guilt or punishment.'" *Id.* at 558–59 (quoting *United States v. Robinson*, 39 F.3d 1115, 1118 (10th Cir. 1994)).

Addressing the first two factors, the government acknowledges that it didn't furnish Wright the Victim Impact Statement until after trial. And the Victim Impact Statement perhaps was marginally favorable to Wright. Evidence is favorable if it is exculpatory or impeaching. *Douglas v. Workman*, 560 F.3d 1156, 1172–73 (10th Cir. 2009). "Impeachment evidence is exculpatory for *Brady* purposes." *United States v. Cooper*, 654 F.3d 1104, 1119 (10th Cir. 2011) (quoting *United States v. Smith*, 534 F.3d 1211, 1222 (10th Cir. 2008)). Here, Wright contends that he could have impeached Blaksley with information from the Victim Impact Statement about Blaksley's efforts to frustrate the Bank's recoupment efforts. Specifically, at trial,

---

[10] In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). The Court also held that the duty to disclose such evidence is applicable even if the accused hasn't requested it. *Id.*

12

Wright wanted to impeach further Blaksley's direct testimony that he had "accepted responsibility" for his crime.[11] R. Vol. 2 at 1118.

In any event, Wright's *Brady* claim fails on the third step because the information in the Victim Impact Statement was not material. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cooper*, 654 F.3d at 1119 (quoting *United States v. Torres*, 569 F.3d 1277, 1282 (10th Cir. 2009)). To make this determination, we view the suppressed evidence's significance against the record as a whole. *Id.* at 1120.

At trial, even without the Victim Impact Statement, Wright impeached Blaksley and attacked his credibility several different ways. After thoroughly reviewing the record, we agree with the district court that Blaksley's credibility was "ably and significantly undermined" at trial. R. Vol. 1 at 126. For example, during cross-examination, Blaksley admitted that he had stolen money from the Bank and had repeatedly lied under oath to keep the money fraudulently obtained from the Bank. Blaksley also admitted that he had lied under oath at a receivership hearing to

---

[11] Here, any impeachment value is questionable from the start. "Acceptance of responsibility" is a term of art in the advisory sentencing guidelines. U.S. Sentencing Guidelines Manual § 3E1.1 (U.S. Sentencing Comm'n 2014). In evaluating whether a defendant has accepted responsibility, the guideline commentary lists several considerations, including whether the defendant has truthfully admitted the offense conduct. On cross-examination, Blaksley testified that by "acceptance of responsibility" he meant "I admitted to the government for what I felt like I did wrong." R. Vol. 2 at 1118.

13

prevent the Bank from recovering the value of its lent money. So, even without the Victim Impact Statement, Wright still showed that Blaksley had obstructed the Bank's recovery.

"Where evidence 'insignificantly impact[s] the degree of impeachment,' it generally will 'not be sufficient to meet the . . . materiality standard.'" *Cooper*, 654 F.3d at 1120 (alteration and omission in original) (quoting *Douglas*, 560 F.3d at 1174). For instance, where a defendant has already attacked a witness's credibility, "additional impeachment evidence will generally be immaterial and will not provide the basis for a *Brady* claim." *Id.* (quoting *Nuckols v. Gibson*, 233 F.3d 1261, 1267 n.8 (10th Cir. 2000)). The record confirms that Wright effectively impeached Blaksley at trial. Any additional impeachment evidence would have been cumulative and insufficient to support a *Brady* violation.

Further, we agree with the district court's position that Wright's not having the Victim Impact Statement does not undermine confidence in the outcome. Notably, the Victim Impact Statement doesn't address any of Blaksley's testimony about Wright's guilt. Instead, it simply concerns Blaksley's conduct after he and Wright committed their crimes. The government presented testimony from Blaksley's employees and the Bank's employees to establish Wright's role. Even if the Victim Impact Statement would meaningfully have cast further doubt on Blaksley's credibility, we agree with the district court that the government overwhelmingly proved Wright's guilt. We are convinced that the jury would have convicted Wright

14

even if he had the Victim Impact Statement before trial. Thus, the district court properly exercised its discretion in denying Wright's Motion for New Trial.

**IV. Wright cannot show that the district court plainly erred in calculating his loss and restitution.**

Wright claims the district court erred in calculating the Bank's loss for sentencing and in calculating the amount of restitution Wright owed under the Mandatory Victims Restitution Act (MVRA). *See* 18 U.S.C. § 3663A. Based on Wright's fraudulent draw requests, the PSR recommended holding him accountable for $1,094,490.60 in actual losses to the Bank. After Wright accepted the PSR as written, the district court imposed the PSR's loss and restitution recommendations. The district court attributed $1,094,490.60 in loss to Wright, resulting in an adjusted offense level of 23 (a base-offense level of 7 plus 16 levels for loss exceeding $1 million).

Together with Wright's criminal history category I, the advisory guideline range was 46–57 months. The district court granted Wright's motion to vary downward two levels for anticipated changes to the Sentencing Guidelines, reducing the guideline range to 30–37 months. From this range, the district court sentenced Wright to 33 months' imprisonment and ordered that he pay $1,094,490.60 in restitution. Now Wright claims that the district court plainly erred in calculating loss and restitution by not reducing loss and restitution by the Bank's foreclosure recovery. Because Wright asserts the same arguments for both loss and restitution, we review these issues together.

15

Under the sentencing guideline governing economic offenses, we calculate Wright's offense level largely based on the amount of loss. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1) (U.S. Sentencing Comm'n 2014). In determining loss, the district court must use the greater of the actual loss or intended loss. *Id.* § 2B1.1 cmt. 3(A). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1 cmt. 3(A)(i). "Where a lender has foreclosed and sold the collateral, the net loss should be determined by subtracting the sales price from the outstanding balance on the loan." *United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011); *see* USSG § 2B1.1 cmt. 3(E)(ii) ("Loss shall be reduced by . . . the amount the victim has recovered at the time of sentencing from disposition of the collateral . . . ."). "The court need only make a reasonable estimate of the loss" and it may use loss information that is supported by a preponderance of the evidence. USSG § 2B1.1 cmt. 3(C); *Washington*, 634 F.3d at 1184.

"A district court may order criminal restitution only as authorized by federal statute." *United States v. Ferdman*, 779 F.3d 1129, 1131 (10th Cir. 2015). Here, the district court ordered Wright to pay restitution under the MVRA. *See* 18 U.S.C. § 3663A. The MVRA mandates that district courts order restitution under convictions for fraud or deceit. 18 U.S.C. § 3663A(c)(1)(A)(ii). Wright agrees that the statute required the district court to order restitution, but he disputes the district court's restitution amount. As in calculating loss under the guidelines, the district court must reduce Wright's restitution obligation to account for money received by the victim from the sale of the collateral to avoid a windfall for the victim. *Robers v. United*

*States*, 134 S. Ct. 1854, 1857–58 (2014). Wright claims that the district court failed to credit the Bank's foreclosure recovery against his loss and restitution amounts but the government says otherwise.

One problem for Wright on appeal is that he failed to object to the district court's loss calculation and restitution obligation. Before Wright's sentencing, the government submitted the Victim Impact Statement from Blaksley's sentencing hearing for the district court's consideration. In that Victim Impact Statement, as mentioned, Mr. Moore stated that the Bank suffered $4,613,811.67 in total losses, *after* crediting the Bank's foreclosure recovery. The PSR set the amount of loss at $1,094,490.60, representing the total amount of Wright's draw requests. Wright didn't object to the PSR or any of its contents. Thus, Wright admitted responsibility for causing $1,094,490.60 in losses to the Bank. *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994) ("Failure to object to a fact in a presentence report, or failure to object at the hearing, acts as an admission of fact.").

At Wright's sentencing, Mr. Moore, the Bank's president, read the district court a second statement, once again asserting that Wright and Blaksley's fraudulent scheme caused the Bank to suffer total losses of $4,613,811.67. As with the PSR, Wright didn't object to Mr. Moore's calculation of the Bank's loss. In accordance with the PSR and Mr. Moore's written and oral statements, the district court set the

17

Bank's loss and Wright's restitution at $1,094,490.60.[12] Significantly, Wright did not object to the statements that the bank's loss figure had already credited the amount received from its foreclosure on the mortgaged property.

Because Wright failed to object to the amount of loss and restitution, we review for plain error. *United States v. Howard*, 784 F.3d 745, 748 (10th Cir. 2015). On appeal, despite his silence in the district court, Wright contends that the district court erred by failing to reduce the amount of loss and restitution by the amount recovered after the Bank foreclosed on the property. But under the plain error standard, Wright waived this challenge by failing to dispute this fact at sentencing. *United States v. Zhou*, 717 F.3d 1139, 1154 (10th Cir. 2013).

"[F]actual disputes regarding sentencing not brought to the attention of the district court do not rise to the level of plain error." *Howard*, 784 F.3d at 749 (quoting *United States v. Lewis*, 594 F.3d 1270, 1288 (10th Cir. 2010)). In *Howard*, the defendant claimed the district court plainly erred in calculating loss for his fraud conviction by adding moneys lost from second mortgages. *Id*. We noted that the challenge to the loss calculation raised solely a fact question. *Id.* We explained that "[b]ecause Defendant failed to object to the evidence below, there was no need for the government to explain why the printout was likely to be accurate." *Id.* Thus, we

---

[12] The district court didn't hold Wright accountable for the total losses of $4,613,811.67. Doing so would have increased Wright's adjusted offense level two levels.

18

concluded that the defendant's fact challenge could not rise to the level of plain error. *Id.*

In *Zhou*, the defendant argued that the district court had erred under the MVRA by ordering restitution that included certain unauthorized expenses. 717 F.3d at 1154. We began by acknowledging that we could properly review for plain error any legal arguments Zhou had failed to raise in district court. *Id.* But for unpreserved factual errors, we restated our rule that even under the plain-error standard, "failure to assert a factual dispute at sentencing waives the challenge because it prevented . . . the district court from resolving the fact issue." *Id.* We determined that Zhou waived any challenges to unobjected-to facts found by the district court. *Id.* at 1154–55.

Here, as did the defendants in *Howard* and *Zhou*, Wright presents a fact question—did the district court's loss and restitution amounts credit the Bank's foreclosure recovery? Had Wright contested this at sentencing, the district court could have asked the Bank's president for more support that the foreclosure recovery was included in the Bank's proffered losses. But Wright's silence to the Bank's evidence left the government no need to belabor an already-lengthy sentencing hearing with more detailed evidence. The same goes for Wright's not objecting to the loss and restitution amounts recommended in the PSR. *Deninno*, 29 F.3d at 580. By not protesting the loss and restitution amounts in the district court, Wright has waived them on appeal. *See Howard*, 784 F.3d at 748; *Zhou*, 717 F.3d at 1154.

**CONCLUSION**

Wright fails to show that he is entitled to a new trial and fails to satisfy the plain-error standard for any of his remaining claims. Thus, the district court's judgment is affirmed.