FILED
United States Court of Appeals
Tenth Circuit

December 22, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KAREN ANTOINETTE JOHNSON,

Defendant - Appellant.

No. 16-3280

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 5:13-CR-40060-DDC-14)**

Christopher M. Joseph, Joseph, Hollander & Craft LLC, Topeka, Kansas, for Appellant.

James A. Brown, Assistant United States Attorney (Thomas A. Beall, United States Attorney, with him on the brief), Topeka, Kansas, for Appellee.

Before **BACHARACH**, **McKAY**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

# I.  INTRODUCTION

A jury convicted Karen Johnson of conspiring to distribute cocaine base. *See* 21 U.S.C. §§ 841, 846.  Johnson asserts the district court violated the Sixth Amendment when it imposed on her the 120-month minimum sentence mandated in 21 U.S.C. § 841(b)(1)(A)(iii) without submitting the drug-quantity issue to the jury for determination under the beyond-a-reasonable doubt standard.  *Cf. Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013).  Assuming she prevails on her Sixth Amendment claim, Johnson argues a separate drug-quantity finding made by the district court, a finding made solely for purposes of calculating a sentencing range under the Sentencing Guidelines, is not supported by sufficient evidence.  Finally, she contends her conviction must be set aside because the district court used an improper evidentiary standard in allowing the government to adduce at trial intercepted cell phone communications.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court rejects Johnson's challenges to her conviction and to the drug-quantity determination made by the district court for purposes of the Sentencing Guidelines.  The district court did, however, plainly err in applying the mandatory minimum set out in § 841(b)(1)(A)(iii) without submitting the quantity issue to the jury for resolution under the beyond-a-reasonable-doubt standard.  Accordingly, the district court is **affirmed** in part and **reversed** in part and the matter is **remanded** to the district

court to vacate Johnson's sentence and resentence her without regard to the mandatory minimum set out in § 841(b)(1)(A)(iii).

## II. ANALYSIS

### A. *Alleyne* Error

#### 1. Background

At the jury instruction conference, Johnson asked the district court to submit the issue of drug-quantity to the jury as part of Instruction 12, an elements instruction.[1] The district court refused this request and, instead, submitted the matter of drug quantity to the jury in the form of a special verdict question, Question 2. Of particular note, Question 2 did not require that the jury make its drug-quantity finding by using the beyond-a-reasonable-doubt standard. The jury found Johnson guilty and decided the conspiracy involved at least 280 grams of

---

[1]To be clear, 21 U.S.C. §§ 841(a) and 846 make it illegal for any person to conspire to, *inter alia*, distribute a controlled substance. A standard violation of § 841(a) is punishable by a term of imprisonment "of not more than 20 years." *Id.* § 841(b)(1)(C). Title 21 does, however, set out heightened penalties, both with regard to minimum and maximum sentences, when a violation of § 841(a) involves a given quantity of drugs. 21 U.S.C. § 841(b)(1)(A), (b)(1)(B); *see United States v. Cassius*, 777 F.3d 1093, 1096-97 (10th Cir. 2015). That is, if a violation of § 841(a) involves at least twenty-eight grams of cocaine base, the defendant "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B). If a violation of § 841(a) involves at least 280 grams of cocaine base, the defendant "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." *Id.* § 841(b)(1)(A). To trigger the enhanced statutory penalties set out in § 841(b)(1)(A) and (b)(1)(B), the relevant drug quantity must be submitted to the jury for resolution under the beyond-a-reasonable doubt standard. *Alleyne v. United States*, 133 S. Ct. 2151, 2156, 2162 (2013); *United States v. Ellis*, 868 F.3d 1155, 1170 & n.14 (10th Cir. 2017).

cocaine base. Thereafter, over her objection, the district court sentenced Johnson to a minimum mandatory term of 120 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii). Johnson asserts the district court violated her Sixth Amendment rights when it sentenced her to a mandatory minimum sentence on the basis of a jury finding that was not made under the beyond-a-reasonable-doubt standard. *See Alleyne*, 133 S. Ct. at 2155.

## 2. Standard of Review

In its brief on appeal, the government asserts Johnson's claim is not preserved for appellate review because she did not object to Question 2 on the ground it was inconsistent with *Alleyne* before the case was submitted to the jury. This court need not decide whether Johnson's objections below preserved her *Alleyne* claim for de novo review because she is entitled to relief even under the rigorous plain error standard applicable to unpreserved claims of constitutional error.[2]

---

[2]It is worth noting, however, that after the briefing was completed in this appeal we rejected the notion that a defendant must object to jury instructions to preserve a claim of *Alleyne* error. *Ellis*, 868 F.3d at 1170-71. *Ellis* made clear that a defendant need not "object[] during trial to the jury instructions or the general-verdict form to preserve an *Alleyne* objection." *Id.* at 1171. Instead, the burden is on the government to make sure the jury is properly instructed. *Id.* ("If the government wanted a heightened sentence under [§ 841(b)(1)(A)], it was obliged to ensure the jury received proper jury instructions and a special-verdict form with spaces enabling the jury to find [the defendant's] individually attributable powder and crack-cocaine amounts."). Nevertheless, a defendant must object at some point before she is sentenced to preserve *Alleyne* error. *Id.* To be clear, however, use of the term "*Alleyne*" is not a necessary predicate to

(continued...)

Under the plain error standard, a defendant must establish

(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. Plain error affects a defendant's substantial rights if there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*United States v. Wright*, 848 F.3d 1274, 1278 (10th Cir. 2017) (quotations and citations omitted). "Notably, this court applies [the plain error] requirements less rigidly in cases, such as this one, that involve potential constitutional error." *United States v. Powell*, 767 F.3d 1026, 1029-30 (10th Cir. 2014) (quotations omitted).

---

[2](...continued)
preservation. *Id.* (holding a defendant can preserve the type of error at issue here "by invoking the applicable decision (here, *Alleyne*) or by claiming that the issue of drug quantity should go to the jury, that an element of the offense was not proved, that the judge cannot determine quantity, or that quantity must be proved beyond a reasonable doubt (and not by a preponderance of the evidence)" (quotations and alteration omitted)). At oral argument, the parties argued vigorously over whether Johnson's objections and statements in the district court met even this forgiving standard. This court seriously doubts the government's assertion that Johnson did not preserve her claim of *Alleyne* error under the standard set out in *Ellis*. After all, in asserting the issue of drug quantity should be submitted to the jury in Instruction 12, Johnson relied on the fact drug quantity is an element of any conviction under § 841(b)(1)(A). In opposing this request and arguing in favor of submission of drug-quantity to the jury in a special verdict form, the government specifically argued drug quantity was not an element. Thus, it certainly appears Johnson preserved the issue under the standard set out in *Ellis*. Nevertheless, as noted above, this court need not resolve this issue because Johnson is entitled to relief even under plain error review. That is, because Johnson is entitled to relief even under the most rigorous possible standard of review, the question of preservation is ultimately irrelevant.

### 3. Analysis

The government concedes on appeal that the district court committed an error that is plain when it submitted the issue of drug quantity to the jury without the required beyond-a-reasonable-doubt standard. The government nevertheless argues Johnson is not entitled to relief because the error did not affect her substantial rights and did not affect the fairness, integrity, or public reputation of judicial proceedings. In so arguing, the government asserts the evidence as to drug quantity is overwhelming. Notwithstanding the government's assertions, this court concludes Johnson has demonstrated the jury's drug quantity determination is not supported by overwhelming evidence. *See Wright*, 848 F.3d at 1278 (holding the burden is on the defendant to demonstrate the error satisfies each prong of the plain error test). Thus, the district court's *Alleyne* error affected her substantial rights. Furthermore, where a defendant has been denied her "Sixth Amendment right to a jury determination of an important element of the crime, the integrity of the judicial proceeding is jeopardized." *United States v. Fast Horse*, 747 F.3d 1040, 1044 (8th Cir. 2014) (quotation omitted).

In arguing Johnson has failed to demonstrate the district court's *Alleyne* error satisfies the third and fourth prongs of plain error review, the government asserts the evidence admitted at trial allowed the jury to "reasonably infer" the following three facts: (1) Johnson was working with co-defendants Anthony Thompson and Albert Banks during the critical period when Thompson and Banks

were selling cocaine base to the confidential informant; (2) Johnson was aware of Thomson's and Banks's drug dealings during this time period; and (3) Johnson was buying cocaine base from Thompson and Banks during this period, showing Thompson's and Banks's dealings with the confidential informant were reasonably foreseeable to Johnson. This court certainly agrees the evidence presented would allow the jury to reasonably infer these three facts. That the jury could do so, however, does not mean it would have been unreasonable for the jury to reach a contrary conclusion.

Indeed, the issue of quantity was heavily contested at trial. During cross-examination of government witnesses, Johnson adduced the following testimony: (1) despite the confidential informant having successfully embedded himself in the conspiracy, he never saw Johnson selling cocaine base, cooking drugs, or handling large sums of money, R. Vol. 3 at 202-04, 216, 259, 351; (2) Johnson did not drive Thompson or Banks to any of the drug transactions with the confidential informant, the very transactions that made up the bulk of the government's quantity assertion, R. Vol. 3 at 228-29; (3) upon execution of the search warrants, no drugs, drug-dealing paraphernalia, or large sums of money were found in Johnson's car or home, R. Vol. 3 at 229, 293; and (4) the government's quantity assertion was undermined by evidence that (a) Thompson and Banks sold both cocaine base and powder cocaine, (b) quantity amounts discussed in wiretapped phone calls were often inflated as Thompson and Banks

cheated drug buyers by inflating drug weights, and (c) coded language used in wiretapped phone calls was possibly subject to wildly different interpretations, R. Vol. 3 at 234, 238, 241-42, 250. Apparently recognizing the force of Johnson's arguments as to the scope of the conspiracy, the government argued as follows during its closing:

> What was the common goal? The common goal was to distribute crack cocaine. There may not have been a common goal to agree to distribute more than 280 grams, but that's not what the instructions require. Okay? I urge you to read the instructions from the judge and follow them. Okay?
>
> . . . . The question is this defendant's involvement with the coconspirators that you heard about. Did two or more people agree to violate the federal law? That's all that's required for that element. Not that everyone charged in the indictment conspire to distribute more than 280 grams. That's just not in the instructions.
>
> . . . .
>
> Finally, there's the issue of weight. Again, if you look at those four elements, weight is not required. You don't have to determine that there was more than 280 grams involved to determine that she's guilty. Please read the verdict form carefully. If you find that she satisfies the elements, the four elements, you convict on Count 1. If you convict on Count 1, then you go examine the weight.

R. Vol. 3 at 547-49.

As the above recitation makes clear, the evidence as to drug quantity was heavily contested at trial and far from overwhelming. That being the case, Johnson has satisfied the third and fourth prongs of plain error review and is entitled to relief on her *Alleyne*-based Sixth Amendment claim.

-8-

**B. Sentencing Guidelines Quantity Determination**

Although it considered itself bound by the minimum mandatory set out in § 841(b)(1)(A), the district court, nevertheless, calculated Johnson's advisory sentencing range under the Sentencing Guidelines. In arriving at her offense level, the district court found Johnson was responsible for 361.86 grams of cocaine base, the quantity of cocaine base Banks and Thompson sold to the confidential informant. Based in part on that quantity finding, the district court determined Johnson's advisory guidelines range was 87 to 108 months' imprisonment. The district court noted that, in its view, both the mandatory minimum sentence set out in § 841(b)(1)(A) and the low-end of the advisory guidelines range were excessively harsh given the facts and circumstances of the case. Were it free to impose a sentence it thought appropriate, the district court indicated it would vary downward from the advisory guidelines range and impose a sentence of less than eighty-seven months' imprisonment. Because, however, it was bound by the provisions of § 841(b)(1)(A), it imposed a sentence of 120 months' imprisonment.[3]

On appeal, Johnson mounts a narrow challenge to the district court's for-guidelines-purposes quantity determination. She asserts the district court erred in finding her responsible for any of the sales of cocaine base to the confidential

---

[3]Of course, as set out above, the district court erred in imposing upon Johnson the mandatory minimum set out in § 841(b)(1)(A).

informant because there is insufficient evidence to prove she was a member of the conspiracy during the time of those transactions. *See* U.S.S.G. § 1B1.3 cmt. n.3(B) ("A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant's joining the conspiracy, even if the defendant knows of that conduct . . . ."). This court reviews for clear error the district court's factual determination that Johnson was a member of the conspiracy during the drug sales to the confidential informant. *See United States v. Aranda-Flores*, 450 F.3d 1141, 1144 (10th Cir. 2006) ("We review for clear error the district court's factual findings regarding sentencing and review de novo its legal interpretation of the sentencing guidelines."). In so doing, this court views "the evidence, and inferences drawn therefrom, in the light most favorable to the district court's determination." *United States v. Brown*, 314 F.3d 1216, 1221 (10th Cir. 2003).

Although it does not compel such a finding, the evidence adduced at trial is sufficient to support the district court's finding that Johnson was a member of the conspiracy during the period the confidential informant bought drugs from Banks and Thompson. During a post-arrest interview, an agent told Johnson authorities had been investigating the conspiracy for "over a year." At the conclusion of the interview, Johnson stated she had given rides to Banks and Thompson up to three

times per week "within that whole year you guys had that investigation."[4]  This

admission supports an inference Johnson joined the conspiracy prior to Banks's

and Thompson's dealings with the confidential informant.[5]  Furthermore,

_____

[4]The relevant conversation was as follows:

> Agent:  How many times you think like in a week's time span—how many trips did you make with AB or Ant sellin' like that drivin'?
>
> Johnson:  You mean in a day?
>
> Agent:  Yeah, I mean just in a week?
>
> Johnson:  Oh, in a week?
>
> Agent:  Yeah, a week's time.
>
> Johnson:  Probably three times out of the week maybe, maybe two.
>
> Agent:  You'd go with AB more than you would Ant?
>
> Johnson:  Yeah . . . within that whole year you guys had that investigation, I might have did half with Ant and half with AB . . . .

[5]As noted above in addressing whether the trial evidence regarding quantity was overwhelming, the mere fact Johnson's interview statements support such an inference does not mean a contrary inference would be unreasonable.  After all, Johnson did not drive Banks or Thompson to any of the transactions with the confidential informant and Johnson did not directly admit during the interview that the purpose of the rides provided to Thompson or Banks was to allow them to sell cocaine base.  Instead, Johnson seemed to suggest the purpose of her giving rides to Banks was to allow him to buy marijuana or "K2."  Given the additional trial evidence identified *infra*, however, it was reasonable for the district court to rely on Johnson's statement as support for its temporal finding while, at the same time, discounting Johnson's attempt to minimize the criminal purpose of the rides she provided to Banks and Thompson.  This is especially true given that such for-

(continued...)

-11-

Johnson's monitored phone calls temporally overlapped, at least marginally, with the controlled buys from the confidential informant, supporting the inference she was working with Banks and Thompson during the time period that they were selling drugs to the confidential informant.[6] This temporal overlap supports the inference Johnson was a knowledgeable member of the conspiracy during the "whole year" she was giving rides to Thompson and Banks to help them with their drug dealing. Finally, the confidential informant testified at trial that Johnson was buying crack from Banks and Thompson as early as 2012.

In sum, given the permissible inferences flowing from the evidence adduced by the government at trial, the district court permissibly attributed to Johnson the cocaine base Banks and Thompson sold to the confidential informant because Johnson was an active member of the conspiracy when the confidential informant purchased the drugs.

## C. Intercepted Communications

Evidence Johnson conspired to distribute cocaine base included intercepted cell phone calls between her, Thompson, and Banks. This court addressed those calls at length in *United States v. Thompson*, 866 F.3d 1149, 1152-61 (10th Cir.

---

[5](...continued)
guidelines-purposes findings need only satisfy the preponderance-of-the-evidence standard. *United States v. Dahda*, 852 F.3d 1282, 1294 (10th Cir. 2017).

[6]On March 14, 2013, Johnson asked Banks to bring her $100 worth of crack cocaine. The last controlled buy occurred on March 18, 2013, when the confidential informant purchased crack cocaine from Banks.

2017).  The intercepted phone calls were obtained via orders issued by a state court pursuant to Kansas's wiretap statute, Kan. Stat. Ann §§ 22-2514 to -2519. *See Thompson*, 866 F.3d at 1153.  Kansas law confines a state judge's authority to order a wiretap to the judge's territorial jurisdiction.  Kan. Stat. Ann. § 22-2516(3); *see Thompson*, 866 F.3d at 1153.  Given this state-law limitation, the federal district court ruled the government could introduce intercepted calls at Johnson's trial only to the extent it could prove the wiretapped cell phone was located within the state court's jurisdiction at the time the call was intercepted. *See Thompson*, 866 F.3d at 1153.  The government used historical cell-service location information ("CSLI") to satisfy that evidentiary burden.  *Id.*  Based on expert testimony regarding CSLI evidence and additional circumstantial evidence, the district court found, specifically utilizing the preponderance-of-the-evidence standard, that the subject phones were in the state court's jurisdiction when the relevant conversations were recorded.  *Id.*

Johnson asserts the district court erred in using a preponderance standard in determining whether wiretapped calls were initiated in the territorial jurisdiction of the state court.  Although it does not appear Johnson preserved this issue for appellate review, this court need not resolve that question because her claim of error fails even upon de novo review.  In *Thompson*, this court specifically held that the district court did not err in employing the preponderance-of-the-evidence standard in analyzing whether the government proved the relevant calls were

-13-

initiated in the state court's jurisdiction. *Id.* at 1160 ("We also reject Thompson's contention that the district court should not have admitted *any* of the intercepted calls at trial, because the court erred in requiring the government to prove the phones were in Kansas's Eighth Judicial District by a preponderance of the evidence, rather than clear and convincing evidence. This argument lacks merit."). Thus, *Thompson* specifically forecloses Johnson's claim of error.

## III. CONCLUSION

For those reasons set out above, Johnson's conviction for violating 21 U.S.C. §§ 841(a) and 846 is hereby **affirmed**. The district court's imposition of the mandatory minimum sentence set out in § 841(b)(1)(A) is **reversed** and the matter is **remanded** to the district court to vacate Johnson's sentence and to resentence her without regard to the provisions of § 841(b)(1)(A).